The final case set for oral argument today, uh, in re E.W. Is this for the, uh, appellate? Yes. Please proceed. May it please the court, counsel. My name is Amanda Warner from the Office of the State Appellate Defender, and today I'm representing Eddie W. in this expedited juvenile appeal. As a preliminary matter, Your Honor, the states have conceded issues number four and five from Eddie's opening brief, so today I will only address issues number one and two. Your Honor, this is, at least from the record, a rather complicated case. It involves a juvenile entering into a guilty plea for an extended juvenile jurisdiction, um, prosecution. And what that means is that Eddie received both an adult sentence and a juvenile sentence for a single conviction. It also involved an open guilty plea as well as a fully negotiated guilty plea for the two separate, um, sentences. And there were numerous problems at both the guilty plea hearing and the hearing for the, to lift the stay on the adult sentence. So it's a complicated case, both by statute and the actual underlying facts of the case. But the issues before this court today are relatively straightforward. It's simply a matter of whether or not Eddie's guilty plea could have been knowing and voluntary when the trial court misadmonished Eddie under Supreme Court Rule 4 of 2 and failed to give Eddie certain admonishments. The extended juvenile jurisdiction statute essentially is pretty straightforward from the statute itself, but in practice it's a little complicated. Part of this is simply because it's not used very often and it's untested. But essentially it requires a defendant, and the trial court for that matter, to keep one foot in the juvenile court system and another foot in the adult court system because he receives both an adult sentence and a juvenile sentence. This case was further complicated here where Eddie entered into a negotiated guilty plea on the juvenile portion of his sentence. He agreed to a sentence of probation, but he entered an open plea with no agreement on the part of the state to his adult sentence. Perhaps that is why the guilty plea hearing, which turned into a sentencing hearing immediately with no break, was complicated and the trial court misadmonished Eddie numerous times regarding even the most basic parts of his plea deal. For example, what he was actually pleading guilty to. He was never given a minimum sentence. The actual hearing itself was also complicated because, just as a housekeeping matter, it had to be stopped at least once because it wasn't being recorded properly. Some of the charges that were involved in the guilty plea had never been designated as extended juvenile jurisdiction statutes, so the trial court had to stop and those had to be designated in the middle of the admonishments. And then finally, after Eddie had been admonished, the state actually changed the charge against Eddie by interlineation from a class X to a class 1. Those admonishments were not re-given and then the plea started over. And counsel, on the adult charge, was that an agreed sentence or was it a completely open sentence? It was a completely open plea. And was there a social mystery or a PSI on that? There was a social investigation report. But again, it's a little bit of a confusing procedure because essentially Eddie showed up in court for his guilty plea. And there the state and Eddie presented a fully negotiated sentence for his juvenile sentence. And the state went on the record and said we couldn't reach an agreement for the adult portion. So it was a standard guilty plea. Really the only difference here was that Eddie was entering an EJJ guilty plea, so it involved both a juvenile sentence and an adult sentence. And there had been a social investigation report ordered, which would have normally been reviewed and taken into consideration during a sentencing hearing on the open plea. We all do that, right? You know, we plead guilty, the trial court schedules a sentencing hearing when there's an open plea, and then there's any number of statutory required steps that are taken. Here, that was completely skipped. Eddie entered his guilty plea for the negotiated. The trial court properly sentenced him on that portion. And then the trial court immediately went into sentencing on the open guilty plea, Your Honor, which is certainly not something that's normally done and also contravenes the statute, which requires that a sentencing hearing be held. Now, within that sentencing hearing, the state wants to call that a hearing, I suppose, simply because he was sentenced. But the trial court sentenced Eddie to the maximum on the adult sentence. So he's 15 years old, and he's given a maximum adult sentence. And this was his first criminal conviction. More importantly, there were no witnesses called. No one ever – there was no notice given to Eddie that he was going to have a sentencing hearing this day. He went in for a guilty plea. That's it. The sentencing hearing should have been scheduled later. The trial court never mentions the social investigation report or the PSI, neither does defense counsel or the state. Certainly it's in the record, and it had been filed prior to the hearing, but it was never mentioned not to ask if there were going to be any additions or corrections, whether it was accurate. It simply did not exist at that hearing on the transcript. Now, it was filed. Also, Eddie was never given a chance to make a statement in allocution, and there were no factors in mitigation or aggravation argued, considered. Nothing like that was on the record. Instead, the trial court accepted the guilty plea, allowed the state and defense counsel to make arguments, and then immediately sentenced Eddie following the open guilty plea hearing. Now, our statutes make clear that a sentencing hearing must occur, and in fact that sentencing hearing must include certain things. The trial court must consider any evidence. It should consider pre-sentence reports. It should consider the financial impact of incarceration. Witness victim impact statements were not offered in this particular case. And then counsel, did the trial court make any findings that it had considered those things before the pre-sentence?  It did not. It did not. None of that occurred. And I think part of the reason that we have this sort of strange dilemma is because it's an EJJ case. Again, it's a complicated statute in practice because there's not really any guidelines on how it's supposed to be applied. So when everyone gets into court, I think there's this everyone's focused on the juvenile sentence, right? And here that was a fully negotiated sentence. The juvenile enters it. And the adult sentence, there's a struggle to sort of figure out what to do with it. It's complicated, I think. And more importantly, except for constitutional challenges to the EJJ, there haven't been a lot of challenges to its application. In other words, what the state has to do when it wants, you know, the stay on the adult sentence lifted, which is another issue that we address in Issue 3 of our brief. Many of these just haven't been tested out. But here, Eddie is receiving an adult sentence. So he has afforded all the protections that an adult should receive. He's an adult in the eyes of the court, at least for this one sentence. And so he should have been given a sentencing hearing. As a juvenile, he's also afforded the right to a sentencing hearing. And the state in its brief wants to say that the sentencing hearing was acceptable because counsel was allowed to make arguments. But a sentencing hearing is so much more than arguments. First, it requires notice that a sentencing hearing is going to take place so that both the state and the defendant can gather witnesses that will be able to testify in mitigation or aggravation. It also requires that the social investigation report or the PSI be considered. And again, there's no indication in the transcript that it was brought up during that hearing. The trial court certainly makes no findings or mentions it in the record. That's not to say it didn't read it. It was filed. But there's nothing in the transcript where it's discussed at that sentencing hearing. And the defendant's allowed to make a statement in elocution, along with factors in mitigation and aggravation, especially when a trial court's going to sentence a 15-year-old to the maximum allowable sentence for an adult. In this case, it was 15 years. So certainly, at the very least, this case must be remanded for a sentencing hearing, a proper sentencing hearing on that open portion of his adult sentence. Over that issue need not be reached by this court because Eddie's guilty plea should actually be vacated for the trial court in the same hearing. So completely misadmonished Eddie and failed to admonish Eddie regarding his Supreme Court Rule 402 admonishments. Now, the Rule 402 admonishments are important because they were put into place to comply with the U.S. Supreme Court's decision in Boykin v. Alabama, which explains to us that guilty pleas must be knowing and voluntary. And the way that we assure that guilty pleas are knowing and voluntary is that we give defendants Rule 402 admonishments. Here, they must substantially comply. They don't have to be word for word, but they must let Eddie know that this is the deal you're getting when you enter into this guilty plea. The easiest way to determine whether they substantially comply is to simply look at the 402 rules and look at the admonishments Eddie was given. First, 402 requires that Eddie be told the minimum and maximum sentence. Here, he should have been told two because he should have been told he could be sentenced to probation up to his 21st birthday incarceration for the juvenile portion and for the adult because it's a Class 1, 4 to 15 years in DOC. This is what the trial court told him, and this is a quote from the record. I want you to understand that I can sentence you to the Department of Juvenile Justice for a period of time, but not to exceed 30 years or your 21st birthday, and or I can sentence you to the Department of Corrections for 30 years. First, there was no minimum sentence given, and that was at page 25 of the record. There was no minimum sentence given, and the trial court could not have sentenced Eddie up to his 30th birth for 30 years in the Department of Juvenile Justice. Obviously, the maximum sentence there was simply to his 21st birthday. For the adult portion, again, there was no minimum sentence, and 30 years is double the amount of time that Eddie was potentially facing. In fact, he was only facing a 15-year sentence. Finally, the trial court failed to mention MSR at all. Here, because he was pleading guilty to criminal sex assault, that's actually three years to natural life. Certainly information that a 15-year-old might want to know before he enters a guilty plea. The trial court failed to mention MSR at all. The trial court also failed to tell Eddie that he has the right to persist in his non-guilty plea. Now, these admonishments are unacceptable for adults, but here, Eddie was only 15. He was surrounded by adults that were pushing forward with this guilty plea. It was crucial that he understand he had the right to stop the proceedings at any point. He was never told that he had the right to persist in his plea of not guilty. Finally, the trial court did not tell Eddie prior to accepting his guilty plea that he had the right to a jury trial. In fact, the trial court never told Eddie that he had the right to a jury trial. Now, only after accepting Eddie's guilty plea and partially sentencing him, does the trial court even acknowledge that a jury trial would have been a possibility, and that is only to ask Eddie's counsel, the counsel who advised Eddie of this. He never addressed Eddie directly. And more importantly, even that took place after the guilty plea had been accepted and after Eddie had already been sentenced on a portion of this guilty plea. Then the trial court also adds some additional admonishments that were simply inapplicable in this case. The trial court said, and again, this is a quote, there's a period of extended probation, oh, excuse me, extended term incarceration could run you 15 to 30 years. Now, for a second or subsequent offense, sir, to be charged as a class X offense, do you understand, sir? And also the penalty for the second or subsequent offense, sir, can run you from 60 to 30 years, or 30 to 60 years, or natural life. Eddie was not extended term eligible, nor was he eligible for the second and subsequent statute that the trial court is referring to there because the offense he was actually convicted of doesn't fall into that. And some, and again, remember that these admonishments were being given to a 15-year-old who was mentally ill and struggled with ADD, had been told that he could be sentenced up to natural life in prison, and he had been given no minimum sentence. Many of these admonishments simply didn't apply to him. The ones that did were incorrect, and some of them were missing altogether. According to our Supreme Court rules, 402 admonishments are supposed to substantially comply. Here, the admonishments only serve to substantially confuse. It would have been difficult for Eddie to have known exactly what he was pleading guilty to, and perhaps for the fully negotiated guilty plea, that was less important. But Eddie was entering an open guilty plea on an adult sentence. He was facing adult consequences, and he had no agreement with the state. It was imperative that he understood, when he entered that guilty plea, exactly what the possible penalties were. Your Honors, this Court sees a lot of arguments about 402 admonishments, to the point that the arguments can become rather esoteric and academic. It is easy to forget that these incorrect, missing, and confusing admonishments were not given to a lawyer or a judge or even an educated professional or an adult. They were given to a mentally ill 15-year-old who had never participated in a guilty plea hearing before. He was being told that the maximum sentence was larger than his age, numbers so large that they were probably almost incomprehensible to a 15-year-old who most certainly has trouble seeing beyond the most immediate future. This is especially true where Eddie also suffered from ADD, and his ability to concentrate was minimal. Therefore, it was even more important in this case that the trial court properly explain the impact or the potential impact of this sentence would have on Eddie. It's also important to remember, Your Honors, that Eddie was not told he had the right to persistently plead not guilty. Now, the state in its brief notes that after Eddie has pled guilty and after he has been partially sentenced, that the trial court finally gets at least part of the admonishment's right. The trial court does tell Eddie that he could be sentenced to 4 to 15 years. This is after the guilty plea has been accepted, though, and it's after he's already been sentenced on part of the negotiated portion of his plea. Part of the problem with that, besides the fact that Eleanor's Supreme Court has said these admonishments must be given prior to accepting a guilty plea, is that Eddie was never told he had the right to persist in his plea of not guilty. He was never told that, hey, you can stop this proceeding any time you get uncomfortable. You have that right. Counsel, this is in juvenile court, am I correct? Yes, you're correct. Were his parents present? His mother was present. The father was not there. He also had counsel present, but these were adults that were talking on his behalf, and actually that makes the situation worse. This is not a dialogue between the trial court and Eddie, as it should be, because the trial court has a duty to make sure that Eddie understands these admonishments and this guilty plea, not just that his attorney dies and not just that his mother dies. But most of the dialogue at this hearing was actually between, or at least to some extent, not most of it, to some extent, a lot of the dialogue was between Eddie's attorney and the trial court and the trial court and Eddie's mother, making sure that they understood what Eddie was entering into. But Eddie's mother is not incarcerated right now. Eddie is incarcerated. And did Eddie have a chance to talk to his mother as this hearing was proceeding? There's certainly nothing on the record that would indicate there was a conversation that took place. The trial court went through these admonishments. He asked Eddie if he understood. He asked his mother if he understood. But there was certainly nothing in the record that indicated there was a dialogue between Eddie and his mother or even Eddie and his counsel. And more importantly, these admonishments were incorrect. So even when the trial court said, did you understand, what would have Eddie understood? That he had all these sentencing ranges thrown at him that, quite frankly, you need a statute book to go through and figure out which ones are the correct ones and which ones aren't. And Eddie's 15. So even if the trial court said, do you understand this, what did Eddie understand? I mean, if they're so wrong, he couldn't be entering a knowing plea, Your Honor. The U.S. Supreme Court has made clear in Miller v. Alabama and the line of cases that come with that that children are impulsive and that they often have trouble understanding the consequences of things in the way that adults do. And that's why it's incumbent upon the trial court to ensure when they're sentencing a juvenile, anyone really, but especially a juvenile, to an adult sentence, that that teenager understand what he or she is getting into. And it's never more important than when a child is entering a guilty plea to an extended juvenile jurisdiction statute. The EJJ has benefits and problems, certainly, both. It allows a juvenile to enter into a juvenile sentence and an adult sentence. And if it all works out okay, the juvenile avoids what otherwise might have been a very long adult sentence. But the problem with being a teenager, as the Supreme Court made clear in Miller v. Alabama, is that teenagers often have trouble predicting risk and understanding what the future holds. It's often hard for them to see beyond the immediate.  Here, Eddie was pleading guilty to probation in what turned out to be 15 years in DOC. And while the adults in their lives may be encouraging him to jump on probation and the guilty plea may be moving forward at a moment in which they feel uncomfortable stopping, it is incumbent, it is the duty of the trial court to ensure that this teenager actually understands what the risk is of the guilty plea that he's entering into. And here, probation, but also a potential 15-year sentence, which he actually received in the Department of Corrections. Thank you. Argument on behalf of the state. Good afternoon, Your Honor. It's good to be before you this morning. Well, it's important to note, as a predicate, a preface to this, that this individual collective confusion caused by these fraudulent launchments is only being raised now for the first time and were not raised before the circuit court. There's nothing in the circuit court held to indicate any type of confusion with these things whatsoever. And that's not to criticize the argument necessarily, because I think it's a legitimate argument that's being made, but I think it also has to be placed in the proper context as we talk about what I want to talk about, which is both jurisdictional and waiver issues. And I think that they're so critical in these cases that I run the risk, perhaps, of seeming like I'm arguing a completely different case. But they are very important, not only because this court has an obligation, an independent obligation, to determine its jurisdiction to reach an issue, but also because it narrows the focus of the particular legal issues that are properly before the court. And those are only a couple. In the EJJ case, as an aggregate of counsel, it's a sort of new creature. The intent, I guess, is to perhaps spur juvenile defendants to comply with juvenile terms or have that kind of guillotine of an adult son's hanging over their head. Of course, good intentions lead to long statutes, and that's what we have here. But I'm willing to break it down into its essentials. It's not terribly complicated. Basically, you've got a consolidated type of procedure that involves both a juvenile and an adult disposition. It does proceed to both a juvenile and an adult sentencing. And what I want to get to right now is what happens if the terms of the juvenile sentence are not compliant. The statute provides for basically two alternatives. If the allocation of noncompliance is that the juvenile is committed a new offense, then the staying adult sentence, if you will, is to be automatically imposed. If it involves something other than that, then the circuit court has broad discretion to either impose an adult sentence, continue the existing juvenile probation, or modify the juvenile probation into something else. Now, when you look at the statute, it lays out these certain procedural aspects of it. The most critical and important here, from our perspective, would be the fact that the state has an obligation to burn and prove by preponderance of evidence the predicate offense or problem, if you will, noncompliance with the juvenile sentence in order to invoke the adult sentence or potentially invoke the adult sentence. Although the statute is not, and I can see this much, not as specifically and particularly written as the statute relates to probation or evocation proceedings, which, when you look at that statute, you'll note that it discusses about, you know, presentation of evidence and things of that nature. And I think that that statutory language is the creation or development of a Supreme Court precedent about what procedural due process aspects are required for probation or evocation proceedings. But it does, in that regard, appear to be basically the same thing as a probation or evocation type of situation and type of proceeding. You enter into a plea, and you have a probation, and then you violate the term of probation, and the state has the burden to prove by preponderance of evidence the violation, and then you get a new sentence. The fact that the only real distinction, in a way, is that the EJJ proceedings actually fix the sentence ahead of time, so you start to kind of know what you're sort of stepping into. But I don't think there's a distinction, not always a distinction without a difference, but perhaps it lends more to the notion of the jurisdictional argument that I'm making to the court here. It's been established in probation or evocation proceedings, because that's really all we have to go on at this point, is that when you are, when you plead guilty, Supreme Court rules require you to file within 30 days a post-sentencing or post-plea motion that relate to the structure or what happened in the plea proceedings itself, that if you do not do that, then at a subsequent probation or evocation proceeding, you revoke, you repeal from the revocation, you are jurisdictionally barred because of the 30-day limitation from attacking the underlying plea itself. And the court has characterized that specifically in terms of the propriety of the court's admonishments. Okay? So where we're at here, if the court is new, I admit there's no authority on this. We're sort of treading new ground here. But I do think that the analogy is sound, because what we have here, like I said, is a plea that was not challenged, that then went to a revocation-type proceeding, called that for sake of arguments, and went to a new sentencing hearing. There was a new sentencing hearing here. And the court made the discretion to call, because the basis of the revocation was not getting counseling done to impose the adults, the previously stated adult sentence. If that analogy holds, then there has been a jurisdictional bar that applies not only to this court, but this court as well, from reaching the merits of the plea itself. Except, critically here, in this situation, this is where we're sort of combining both the jurisdictional and the enforcement considerations here, waiver considerations, the defendant can raise, in a post-conviction petition, aspects of the plea. And that, interestingly enough, is what happened in this case. And so, I don't know if defense counsel just sort of understood this, or just got lucky, but whatever the case is, he did file a post-conviction petition. So what we have in this case is kind of two tracking events at the circuit court level, which have invested in this court of jurisdiction. The court's ruling on the post-conviction petition, which is to be considered a first-stage petition, even though it's filed by counsel. And the motion directed at the probation revocation proceeding, which is essentially that the state never actually acquired jurisdiction to impose the adult sentence because it didn't file a motion specifically stating that it was invoking EJJ to get the adult sentence. Now, the only issues raised in the post-conviction petition are whether the defendant had waived jury, or whether the defendant was admonished of his right to a jury trial. Now, that's it. So a lot of the other, pretty much everything else that counsel was arguing was not raised. When counsel makes the argument, I agree with that. Well, you know, that argument is nonsensical because, you know, by virtue of, I guess, attacking one aspect of the Rule 402, admonishment in this case would be the right to a jury trial. You sort of collectively bring in everything else. I found no case that says that, and I'm not sure there is. A post-conviction petition is pretty, the law is pretty clear on that regard. You raise an issue, that's your issue, and you've waived everything else. Now that you've waived it, you don't even get to play there. You don't get to end it. It's just not there. And so I think at the outset, and I raise this now because I think that when you combine both the jurisdictional aspect of the limitations of the issues that could be raised in combination with the specific issues raised in the post-conviction petition, it really only leaves three issues before this Court, the jury trial waiver, admonishment, and execution, if you will. And the motion that relates to the procedure for the revocation of the juvenile probation. Now, I do argue, just completely as I say, that if this Court elects to consider the post-trial motion as a candidate for post-conviction petition, the post-trial, post-sentencing motion in the revocation proceeding is sort of allowing all these other arguments to come in. In other words, sort of, you know, you don't buy a jurisdictional argument. It's nonetheless a plain error analysis because they were not raised below at any point. Not even in that aspect of the proceedings below. So I've listed a lot of times, but I think it's important because, number one, I think we're sort of new territory. And so I want to kind of have a chance to talk to your honors about this a little bit. But also to perhaps put in your minds the context of these issues is not something that was raised below, was preserved below, that were litigated below, that the defendant articulated in some fashion, oh, my gosh, I've got 15 years. I had no idea that was going to happen. I thought maybe it might be 30 because of the judge's admonishments or I didn't know what was going on. But none of that happened. That's happening here through the skillful advocacy of the public counsel, but it didn't happen below. And so I think that once we establish that, then I'll just sort of briefly touch upon everything else here. Now, I'll talk about the Rule 402 admonishments a little bit, and then we'll talk about the sentencing hearing. It wasn't the greatest job by the circuit court in this case in giving the admonishments, but I think what you're going to find interesting enough is that when you sort of take a look at what happened here, the defendant has done a very good job, I think, sort of cherry-picking instances in the record where a court says something, but you'll also note in the record that the court corrects itself later on. And that's a very good way of arguing it, but I think that what this court has to do also is it has to look at the entire proceedings to determine exactly what in the Rule 402 admonishments were not complied with. And from my assessment, the only thing that was not given as defendant arguments was the admonishment that you have the right to persist in a trial. So bearing that in mind, I'll start first with the prior preservation, which is the jury trial admonishment and waiver. In this case, there was a jury waiver done. It was done sort of in the middle of everything, sort of like, you know, which we see sometimes an ah-ha moment. Do we get a jury waiver in this case? There was a written jury waiver? I don't know if it was written, Your Honor, I'm not sure. It was certainly discussed both with counsel and the defendant at the time during the proceedings. And that was coupled with the discussion of police counsel's attestation, if you will, that there had been a discussion about the rights of the jury trial and it was given up by waiving the jury trial. And the court had also given trial, general trial admonishments under Rule 402, the rights of confrontation and things of that nature. I thought you indicated the court, did the court mention jury trial in the admonishment? The court did not mention jury trial in the admonishment, but it was brought up at the time when they were discussing the jury trial waiver, whether there had been discussions that the defendant understood his right to a jury trial. Oh, so you're saying the court asked counsel if they had talked about jury trial. That's correct. There was not the court reading, as it should be, the script that says you have the right to a jury trial, you have the right to confrontation, et cetera, et cetera. That's not what happened here, and I admit that. Now, that being the case. Now, you're confusing me. Is he talking to counsel or is he talking to the defendant? Talking to counsel. Talking to counsel about the rights of the jury trial. And the defendant knows nothing about this? The defendant, well, what counsel said is that he had discussed with the defendant, and then the defendant said, yes, that's correct, he did. He acknowledged having discussed that with his counsel. The court didn't address the defendant after this discourse, but it was principally between the trial judge and defense counsel, as defense counsel points out here. So did defense counsel say, I've talked to him, and he's waiving a jury trial? Correct. And defense counsel did say that? And he understood the jury trial right, and then he also was waiving jury trial. Correct. Right. So those things are in the record. Now, those are the things that were raised in the post-convention petition. So I have to also say at the same time that, you know, under Hodges, you're only going to get past the first stage if it's going to be affirmatively rebutted by the record. I don't know if that affirmatively rebutts it or not. Obviously, that's our position. If we don't get past that, then really everything else doesn't matter at this point because it has to go back. But that being the case, the balance of the arguments now fall under the rubric of plain air and, of course, substantial compliance. I'll go through here some of the things that the counsel said because I want to get through this now. As far as the minimum and maximum sentence go, it's true that the court kind of finally figured out what it was. There was some bad in Washington federal court preceding that. There's no doubt about that. But the court did do it. Now, the defendant makes the argument that it came kind of like after he had already been accepted, and that's true as well. But also, it still was during the process by which there would have been nothing to prevent the parties from essentially abrogating the proceedings at that point. I mean, guilty plea proceedings aren't sort of gotcha moments where, you know, you're two-thirds of the way through and the court says he accepted and it was like, well, wait a second. I got confused about something. But it was never articulated any confusion again at this point, at that point or any point, about the minimum and maximum sentence. I disagree with counsel that MSR enrochments were not given. I have in my notes that they were. In fact, I believe it actually gave the correct enrochment but imposed the wrong MSR. It was supposed to be a variable three to natural life and not natural life, which is what the court ultimately imposed. With regards to the other enrochments, with regards to extended term and subsequent sentences, what's interesting about that is that I guess the question is, is a surplusage enrochment the same as an improper enrochment? I guess the answer to that is yes and no. No, because it's not necessary and, therefore, it doesn't really fall within the four corners of Rule 402's requirements. Yes, if it can be argued or I'm sure I know this, let's say, I'm going to rephrase it, established that the surplusage somehow confused the defendant's understanding that he's being guilty. And, of course, that defendant will, having made an argument that essentially the entirety of the plea proceedings sort of lent that confusion, that would fall into that argument. But I don't think that it does because, again, the defendant's not a repeat offender. The court was giving what it felt was thorough enrochments about all potential problems. And now we have a rule for us that does say that you have to admonish about extended term, but it's qualified by like an applicable or possible or something like that. So, you know, and maybe the court was just thinking it would be thorough in giving that when it wasn't necessary, but it wasn't improper either. And the absence of anything on the record to show that that somehow substantially impaired the defendant's ability or understanding what he's being guilty to or the potential sentence that he was maximally facing is not appearing from the record. So I think that when this court looks at it, it will say to itself, you know, probably not a 402 admonishment hearing that we'd want to present up at the judicial conference in Chicago, but it does comply with substantially the requisites of Rule 402. Now, in regards to the sentencing hearing, again, we get into a lot of arguments here about surprise and unpreparedness and things kind of of that nature. Although, again, we don't have any evidence of that in the record, but that was the case here at all. It appears that they came into this sort of with eyes wide open that this is what we're going to do. We're going to get through this juvenile thing and we're going to try to hash out an agreement on the adult aspect of this case, but it didn't do it. So let's just go ahead and go forward and see what the court's going to do. I mean, that's pretty elegant from the record, but that's what everyone was going to want to do in this instance. Now, no witnesses. Now, there's no requirement that witnesses be called to the sentencing hearing, and there's no evidence in this record to show that the court prevented anyone from calling the witness had they chosen to do so. And, again, I tie that back to the understanding that when they came to this sort of EJJ disposition, they kind of knew what they were walking into. So if they're going to present witnesses, as they did at the revocation proceeding, then there was nothing to prevent them from doing so. No notice. I mean, you know, I'm not going to beat this dead horse again. Like I said, this is what we're going to do, but they're there to do. Didn't mention the social history report. It did have counsel acknowledges that were handed before it. It did not talk about it, nor did it talk about factors in aggravation and mitigation. But that brings into play two legal concepts. Number one, the court is presumed to know the law and to consider proper information. And the court is not required under the law to articulate specifically any factor in aggravation and mitigation. The one thing that will concede the defense argument is it's neither the state nor the defense actually argued aggravation and mitigation, which was a little odd. But nonetheless, it bore the hallmarks of arguments that attorneys would make in a sentencing hearing about an appropriate disposition. You know, defense counsel, you know, wanted the minimum, and the state was asking for the maximum. As far as the allocution is concerned, at one point the court did ask the defendant whether he wanted to say anything. Now, it's not do you wish to make a statement in the allocution or something that quite formalistic. But it's also a matter of the situation of the defendant's mind was completely ignored during the proceedings. So, with all that in mind, given the scenario in which the court won the proceeding, I would stand by the argument that this constitutes an appropriate and proper sentencing proceeding, as the way the parties understood it to be conducted in this sort of joint HHAA prosecution situation. Does the court have any questions for me? I appreciate your time. Yes, sir. I also agree with opposing counsel that the court made no findings before issuing the sentence on the adult charge that considered the statutory factors in aggravation and mitigation. I can see. The court did not specify the specials name. The social history or social history. Correct. And as I noted just briefly, it's not required. And I think that's just the only point I'm making there. Thank you. Your Honor, just a couple of points. The state first wants to deal with this via jurisdiction, but Eddie filed a post-conviction petition, and a post-conviction petition allows someone to attack a guilty plea where it wasn't voluntary or knowing. Eddie specifically said, had he known he had the right to a jury trial, he would not have entered into this guilty plea. Now, that alone should be sufficient to get him past a first-stage post-conviction petition. The state is arguing that he was told, but actually what happened was, first, there was no written jury waiver to answer your question, Judge. And then the record shows that the state asked, the trial court stated, Eddie failed to waive a right to a jury trial in his proceeding. Did counsel confer with him concerning that? Counsel then explained that he told Eddie he would be waiving the right to a jury trial if he entered into a guilty plea. It's important to note that, you're right, guilty pleas aren't gotcha proceedings, but it occurred after Eddie had entered the guilty plea. The trial court didn't say to Eddie, you have the right to a jury trial, which was sort of a unique thing anyway because this was a juvenile court, and as a general rule, they don't have the right to a jury. But it's also important to note that this happened after Eddie had already been pled guilty and been sentenced. And again, it's not a gotcha moment, but generally, when trial courts don't make the correct admonishments, the appropriate thing is to say, look, you have the right to a jury trial. Do you still want to persist in your plea? Is this still the deal that you want to make? We cannot do this. Not only was he admonished about the jury trial after he had entered his guilty plea and after he had been sentenced, but no one ever told him that he could stop and change his mind once he had received that admonishment. Also, 402s, each individual 402 cannot be viewed in a vacuum. And the state's idea that because Eddie only brought up the right to a jury trial, this court has no jurisdiction to look at 402s as a whole is simply not supported anywhere in the case law. Rule 402s must be viewed for substantial compliance. In his post-conviction petition, Eddie complained about one 402, but in order to determine whether 402s comply, this court necessarily has to look at the 402 admonishments. For example, there could be a case where one of these admonishments weren't given, but it could still comply based on a variety of factors. This court only knows if it complies by looking at the 402 admonishments. And here, they simply don't comply. The state also wants to argue here that we're cherry-picking. First, most of the things that I read to you today were direct quotes from the record. And what you'll find when you actually read the hearing transcript is, yes, the trial court did eventually correct itself on one aspect, this idea that it was a 4-15-year sentence. But again, that was after Eddie pled guilty, after he had been sentenced, and not once did counsel, the trial court, or the state explain, hey, look, I know this is a different admonishment than the one you're actually told when you pled guilty, but you can change your mind. And this is really crucial when you consider that the state has already conceded that Eddie was never told he had the right to persist in his plea of not guilty. So we're going to tell a 15-year-old the wrong admonishments, accept his guilty plea, sentence him, and then when we do correct them, we're not going to tell him that he has the right to change his mind, nor are we going to solicit, ask him, do you want to change your mind given that the terms have changed here? We didn't do any of that. And then finally, the state talks about this idea of surplusage. Is that wrong? And they go on to say that, look, it's only wrong if he's substantially impaired. That's not the standard here. The standard is whether or not Eddie could have knowingly and voluntarily entered in a guilty plea based on the admonishments he was given. This isn't whether or not the trial court substantially impaired him, but whether the trial court substantially informed him. The trial court had the duty here to inform him. And when the trial court gives so many admonishments that they just stack upon one another and they're all wrong, that surplusage is absolutely confusing. Again, especially when you're not a lawyer or a judge or even an adult, you're a 15-year-old. Here, the trial court hadn't given Eddie a correct admonishment yet regarding the minimum and maximum sentence. So certainly the surplusage would have only added to Eddie's confusion. And finally, you know, the state talks about with the sentencing hearing that this was not a surprise, but actually the record indicates that this entire proceeding was sort of a surprise. After Eddie had entered his guilty plea, after Eddie had entered his guilty plea, after he had been sentenced, and I finished this, thank you so much, counsel is still asking the state, trial, I'm sorry, trial counsel actually asked the trial court, now wait a minute, how does this EJJ proceeding work? This is what I think is going to happen. And it was that point the trial court explained how it would work. And that is what the state is considering Eddie's statement. So it's clear from the record that everyone was confused by this proceeding and everything was a surprise. Thank you. Thank you, counsel. We'll take this matter under advisement. Court will be in recess.